JUDGE JONES

07 CV 5592

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

(ECF CASE)

-----------------------------------------------------------x

FLOWSERVE CORPORATION,
FLOWSERVE US, INC., and
FLOWSERVE INTERNATIONAL, INC.,

           Plaintiffs,

      v.

INGERSOLL-RAND COMPANY,

           Defendant.

-----------------------------------------------------------x

Civil Action No.

RECEIVED
JUN 12 2007
U.S.D.C. S.D.N.Y.
CASHIERS

COMPLAINT

      Plaintiffs Flowserve Corporation, Flowserve US, Inc., and Flowserve International, Inc. (collectively "Plaintiffs"), by their counsel, McCarter & English, LLP, as and for their Complaint against defendant Ingersoll-Rand Company ("IR"), allege as follows:

### THE PARTIES

      1.    Flowserve Corporation ("Flowserve") is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 5215 N. O'Connor Boulevard, Suite 2300, Irving, Texas.

      2.    Flowserve US, Inc. ("Flowserve US") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 5215 N. O'Connor Boulevard, Suite 2300, Irving, Texas.

      3.    Flowserve International, Inc. ("Flowserve International") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 5215 N. O'Connor Boulevard, Suite 2300, Irving, Texas.

4. IR is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business located at 155 Chestnut Ridge Road, Montvale, New Jersey.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000 exclusive of interest and costs and in that there is complete diversity of citizenship between plaintiffs and defendant.

6. Venue is proper in this judicial district and division pursuant to 28 U.S.C.§ 1391(a) because it is a district in which (a) a substantial part of the events or omissions giving rise to the claim occurred, and (b) IR consented to venue in this District pursuant to a written agreement.

## NATURE OF THE ACTION

7. Plaintiffs seek indemnification from IR for payments made and to be made by Flowserve's wholly owned subsidiary, Flowserve do Brasil Ltda., to satisfy pre-existing Brazilian tax liabilities of a subsidiary of IR acquired by Flowserve in August, 2000. IR's indemnification obligation is set forth in a written Purchase Agreement dated February 9, 2000, as amended (the "Purchase Agreement"), a copy of which is annexed hereto as Exhibit A, between and among the following: Flowserve and an affiliate of Flowserve known as Flowserve RED Corporation ("Flowserve RED")(Flowserve and Flowserve RED are jointly referred to herein as the "Buyers") and IR and IDP Acquisition, LLC (jointly referred to herein as "IR" or the "Sellers"). Notwithstanding its clear obligations under the Purchase Agreement and Flowserve's demands for indemnification, IR has failed and refused to indemnify Flowserve for these tax liabilities.

## FACTUAL BACKGROUND

### The Transaction

8. On August 8, 2000 (the "Closing Date"), the Buyers acquired from the Sellers all right, title and interest in and to a partnership known as Ingersoll-Dresser Pump Company ("IDP") in exchange for the total sum of $775 million in cash (the "Transaction"). The IDP partnership was owned 51% by IR and 49% by IDP Acquisition LLC.

9. The Transaction closed pursuant to the Purchase Agreement dated February 9, 2000, as amended.

10. The Purchase Agreement provided that on the Closing Date, the Buyers would acquire all of the Sellers' right, title and interest in the IDP partnership "free and clear of all ... encumbrances of any nature." The assets acquired by the Buyers from the Sellers in the transaction included a Brazilian subsidiary of IDP known as Ingersoll Dresser Pumps do Brasil Industria E Comercio Ltda. ("IDP Brasil").

11. The Purchase Agreement provided that the Closing Date would take place no later than June 30, 2000.

12. By Amendment No. 1 dated July 14, 2000 (a copy of which is annexed hereto as Exhibit B), the Purchase Agreement was amended to provide, among other things, for the Closing Date to be extended to a date not later than October 31, 2000.

13. The Closing took place on August 8, 2000.

14. After the Closing, Flowserve RED transferred all of its domestic assets, rights and claims to Flowserve US, and all of its foreign assets, rights and claims to Flowserve International, including Flowserve RED's assets, rights and claims under the Purchase Agreement.

3

ME1 6394602v.7

15. Upon information and belief, IDP Acquisition, LLC is an inactive company whose status is listed in the records of the Delaware Secretary of State as cancelled/voided as of June 1, 2002.

**IR's Covenants, Representations and Warranties Concerning Tax Matters**

16. Under Article II of the Purchase Agreement, "Sellers, jointly and severally, represent[ed] and warrant[ed] to the Buyers as follows":

> (b) Except as set forth in Section 2.12 of the Disclosure Schedule:
>
> (i) All Tax Returns required to be filed by or on behalf of any member of the Partnership Group have been or shall be timely filed ... and all Taxes (whether or not shown as due on such Tax Returns) *have been or shall be paid* within the prescribed period other than the Taxes that are being contested in good faith as disclosed in Section 2.12(b) of the Disclosure Schedule.
>
> (ii) No claim for unpaid Taxes ... is being asserted against any member of the Partnership Group....
>
> (iii) There are no: (w) examinations, audits, actions, proceedings, investigations or disputes pending, (x) claims asserted in writing, for Taxes upon any member of the Partnership Group ... [emphasis added].

17. Under Section 2.2 of the Purchase Agreement, the "Partnership Group" is defined to include IDP and each of its "Subsidiaries" or "affiliates", domestic and foreign as listed on Section 2.2 of the Disclosure Schedule, including IDP Brasil.

18. The Disclosure Schedule, "Section 2.12" relating to Tax Matters, did not list Brazil as one of the jurisdictions in which tax examinations, audits, actions, proceedings, investigations or disputes were pending.

19. In fact, at the time of the Closing, numerous tax claims had been asserted against IDP Brasil, none of which was disclosed to Flowserve.

4

20. Section 6.5(a) of the Purchase Agreement, entitled "Tax Indemnity," states in part:

> (a) Sellers agree to jointly and severally *indemnify and hold Buyers...harmless against any Taxes* (except to the extent of the amount described as "Accrued income taxes" on the 1999 Balance Sheet less any amount paid by the Buyers to the Sellers under Section 6.4(b) hereof) and against any loss, damage, liability or expense, including reasonable fees for attorneys and other outside consultants, <u>incurred</u> in contesting or otherwise in connection with such Taxes: (i) (x) in the case of Income Taxes of any Subsidiary and (y) in the case of all other Taxes imposed on or payable by any member of the Partnership Group with respect to any taxable period ... that ends on or before the Closing Date, (ii) arising from the breach of any representation, warranty or covenant of Sellers with respect to Taxes under this Agreement, with respect to any taxable period, or portion thereof, that ends on or before the Closing Date...; (iii) with respect to a Straddle Period, Taxes imposed on or payable by any member of the Partnership Group which are allocable . . . to the portion of such period ending on the Closing Date... [emphasis added].

21. Paragraph 6.4(c) of the Purchase Agreement defines the Straddle Period as the taxable year ending after the Closing Date which began before the Closing Date (the "Straddle Period").

22. As set forth more fully herein, Plaintiffs have incurred losses, damages, liabilities and expenses in contesting or otherwise in connection with taxes imposed on or payable by IDP Brasil for the period prior to the Closing; losses, damages, liabilities or expenses arising from IR's breach of its representations, warranties and covenants concerning taxes under the Purchase Agreement; and tax liabilities imposed on or payable by IDP Brasil during the Straddle Period.

**The Undisclosed and Straddle Period Tax Liabilities of IDP Brasil**

23.     After the Transaction closed, Flowserve learned that contrary to IR's representations, warranties and covenants, numerous tax claims and liabilities had been imposed on or were payable by IDP Brasil for the period prior to the Closing, which had not been paid or arranged to be paid by IR (hereafter are referred to as the "Brazilian Tax Matters").

24.     IR did not list the Brazilian Tax Matters among the Tax Matters being contested in Section 2.12 of the Disclosure Schedule.

25.     Upon information and belief, IR and/or its agents, subsidiaries or affiliates were aware of substantially all of the Brazilian Tax Matters prior to the Closing of the Transaction.

26.     Since the Closing, a number of the Brazilian Tax Matters have been finally determined and paid to the Brazilian Tax Authorities by Flowserve do Brasil Ltda., a wholly owned subsidiary of Flowserve ("Flowserve do Brasil,"). After acquiring IDP Brasil, Flowserve renamed that entity Flowserve do Brasil. The total amount of the Brazilian Tax Matters which have been finally determined, including interest, penalty payments and the reimbursable fees and expenses of Flowserve's Brazilian attorneys, less any tax benefit realized by Flowserve, is more than 14.0 million Brazilian Reals, or $7.1 million U.S. Dollars. Those Brazilian Tax Matters which have been finally determined will be referred to herein as "the Closed Tax Matters."

27.     The Closed Tax Matters consist of Brazilian Tax Matters for which the final liability and amounts owed to the applicable Brazilian Tax Authorities have been finally determined and have been either paid in full or paid in part with remaining payments to be made in accordance with an installment plan. IR is obligated to indemnify Plaintiffs for all of the Closed Tax Matters.

ME1 6394602v.7

28. Not all of the Brazilian Tax Matters that have been asserted by the Brazilian Tax Authorities have as yet been finally determined as of the date of the filing of this Complaint. Those which have not yet been finally determined presently total at least 5.2 million Brazilian Reals, or $2.65 million U.S. Dollars, and will be referred to as the "Open Tax Matters." IR is obligated to indemnify Plaintiffs for all of the Open Tax Matters.

29. Flowserve, through its wholly-owned subsidiary Flowserve do Brasil, also paid IDP Brasil's Income Taxes for the entire year of 2000. Pursuant to the Purchase Agreement, IR is obligated to indemnify Flowserve for the portion of such tax payments that accrued during 2000 prior to the Closing Date of the Transaction. The Income Taxes for the year 2000 prior to the Closing Date of the Transaction paid by Plaintiffs, through Flowserve do Brasil, totaled approximately 516,000 Brazilian Reals, or $262,000 U.S. Dollars (the "Straddle Period Taxes"). IR is obligated to indemnify Plaintiffs for the Straddle Period Taxes.

**IR's Breach of Its Obligations to Indemnify and Reimburse Flowserve**

30. Flowserve has demanded that IR indemnify Plaintiffs for the Brazilian Tax Matters, including the Closed Tax Matters, the Open Tax Matters and the Straddle Period Taxes.

31. IR has failed and refused, despite due demand therefore, to indemnify Plaintiffs for any of the Brazilian Tax Matters, including the Closed Tax Matters, the Open Tax Matters and the Straddle Period Taxes.

**FIRST COUNT**
(Breach of Contract: Indemnification for Tax Claims
Paid Prior to the Entry of Judgment)

32. Plaintiffs repeat and reallege paragraphs 1 though 31 of the Complaint as if fully set forth herein.

33. The Purchase Agreement is a binding contract.

MEI 6394602v.7

34. Plaintiffs have complied with all of their obligations under the Purchase Agreement.

35. Under the Purchase Agreement, IR is obligated to indemnify Plaintiffs for all of the Brazilian Tax Matters, including the Closed Tax Matters, the Open Tax Matters, and the Straddle Period Taxes.

36. IR materially breached its representations, warranties and covenants under the Purchase Agreement in that: (i) all Taxes of IDP Brasil for the period prior to the Closing had not been paid or arranged to be paid by IR; (ii) claims for unpaid Taxes had been asserted against IDP Brasil for the period prior to the Closing; and (iii) there were numerous tax examinations, audits, action proceedings, disputes and/or claims in writing for Taxes against IDP Brasil, including the Brazilian Tax Matters, that were not listed in Section 2.12 of the Disclosure Schedule in the Purchase Agreement.

37. IR further materially breached the Purchase Agreement by refusing and failing to indemnify Plaintiffs for the Brazilian Tax Matters (including the Closed Tax Matters and Open Tax Matters) and the Straddle Period Taxes, despite due demand therefore.

38. As a direct and proximate result of IR's breaches of the Purchase Agreement, Plaintiffs have been and continue to be damaged, and are entitled to indemnification from IR for all of the Brazilian Tax Matters and other tax claims attributable to IDP Brasil paid or finally determined prior to the entry of judgment, in an amount yet to be precisely determined but is believed to be in excess of 14.0 million Brazilian Reals, or $7.1 million U.S. Dollars.

39. Accordingly, Plaintiffs are entitled to judgment in their favor and against defendant IR for indemnification and damages from IR for IR's breaches of the Purchase Agreement, including without limitation indemnification and damages related to the Brazilian

ME1 6394602v.7

Tax Matters, the Straddle Period Taxes, prejudgment interest and costs of suit, reasonable attorneys' fees (including counsel fees and expenses incurred in this action and the costs and expenses of Brazilian counsel and outside consultants in connection with the Brazilian Tax Matters) and for such other relief as may be appropriate.

## SECOND COUNT
(Declaratory Judgment: Breach of Contract for Indemnification
For Tax Claims Paid After Entry of Judgment)

40. Plaintiffs repeat and reallege paragraphs 1 through 39 of the Complaint as if fully set forth herein.

41. Under the terms of the Purchase Agreement, IR is obligated to indemnify Plaintiffs for the Brazilian Tax Matters, including the Open Tax Matters, and any other taxes, losses, damages, liabilities or expenses incurred by Plaintiffs attributable to IDP Brasil for the period prior to the Closing which have not yet been finally determined or asserted.

42. As a direct and proximate result of IR's breaches of the Purchase Agreement (as described above), Plaintiffs have been and continue to be damaged in an amount yet to be precisely determined, but believed will be in excess of 4.92 million Brazilian Reals, or $2.5 million U.S. Dollars.

43. An actual controversy exists between Plaintiffs and IR and is ripe for adjudication in that Flowserve has requested indemnification from IR pursuant to the Purchase Agreement for all Brazilian Tax Matters (including the Closed Tax Matters and Open Tax Matters) and the Straddle Period Taxes, and IR has failed and refused to provide such indemnification in breach of the Purchase Agreement.

44. Based upon the foregoing, Plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201(a) against IR declaring that IR breached the Purchase Agreement,

9

ME1 6394602v.7

that IR is obligated to indemnify and hold Plaintiffs harmless for the Open Tax Matters and any other taxes, losses, damages, liabilities or expenses incurred by Plaintiffs attributable to IDP Brasil for the period prior to the Closing which have not yet been asserted or finally determined, and all other losses, damages, liabilities or expenses caused by IR's breaches of the Purchase Agreement, including prejudgment interest and costs of suit, reasonable attorneys' fees (including counsel fees and expenses incurred in this action and the costs and expenses of Brazilian counsel and outside consultants in connection with the Brazilian Tax Matters), and for such other relief as may be appropriate.

## THIRD COUNT
(Breach of Warranty)

45. Plaintiffs repeat and reallege paragraphs 1 though 44 of the Complaint as if fully set forth herein.

46. Under Article II of the Purchase Agreement, IR made a number of express warranties to Plaintiffs which were relied upon by Plaintiffs in entering into the Transaction, including the following: (i) "that All Tax Returns required to be filed by or on behalf of any member of the Partnership Group have been or shall be timely filed ... and all Taxes (whether or not shown as due on such Tax Returns) have been or shall be paid;" (ii) that "No claim for unpaid Taxes ... is being asserted against any member of the Partnership Group; and (iii) that "There are no: (w) examinations, audits, actions, proceedings, investigations or disputes pending, (x) claims asserted in writing, for Taxes upon any member of the Partnership Group...." These warranties were false and misleading when they were made.

47. IR materially breached such warranties in that, among other things: (i) all Brazilian Taxes of IDP Brasil for the period prior to the Closing had not been paid; (ii) claims for unpaid Taxes had been asserted against IDP Brasil for the period prior to the Closing; and (iii)

10

there were numerous tax examinations, audits, action proceedings, disputes and/or claims in writing for Taxes against IDP Brasil, including the Brazilian Tax Matters, that were not listed in Section 2.12 of the Disclosure Schedule in the Purchase Agreement.

47.     As a direct and proximate result of IR's breaches of its warranties to Flowserve, Plaintiffs have been and continue to be damaged, and are entitled to indemnification and damages from IR for all of the Brazilian Tax Matters and any other taxes, losses, damages, liabilities or expenses incurred by Plaintiffs attributable to IDP Brasil for the period prior to the Closing, in an amount yet to be precisely determined but is believed to be in excess of 19.0 million Brazilian Reals, or $9.6 million U.S. Dollars.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand that judgment be entered in their favor and against defendant IR for the following relief:

(a)     Indemnification and damages for all taxes, losses, damages, liabilities or expenses incurred by Plaintiffs attributable to IDP Brasil for the period prior to the Closing, including for the Closed Tax Matters, Straddle Period Taxes, and any other tax claims attributable to IDP Brasil which are paid (or arranged to be paid) prior to entry of judgment, in an amount to be determined at trial, including reasonable fees and expenses of Brazilian tax counsel and consultants, together with pre-judgment interest thereon;

(b)     A declaratory judgment that IR is required to indemnify Plaintiffs for all other taxes, losses, damages, liabilities or expenses to be incurred by Plaintiffs attributable to IDP Brasil that are not yet sufficiently determined to be included among the indemnification and money damages awarded in the judgment,

ME1 6394602v.7

including the Open Tax Matters, any other tax claims attributable to IDP Brasil which are not finally determined prior to entry of judgment, and reasonable fees and expenses of Brazilian tax counsel and consultants, together with pre-judgment interest thereon;

(c)     Attorneys' fees incurred in this action and costs of suit; and

(d)     Such other and further relief as this Court shall deem just and proper.

Dated: June 11, 2007
New York, New York

McCARTER & ENGLISH, LLP

By: /s/ William J. O'Shaughnessy
William J. O'Shaughnessy
245 Park Avenue, 27th Floor
New York, New York
(212) 609-6800
*Attorneys for Plaintiffs*