UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FLOWSERVE CORPORATION, FLOWSERVE US INC., and FLOWSERVE INTERNATIONAL, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>INGERSOLL-RAND COMPANY,<br><br>Defendant. | 07 CV 5592 (BSJ)<br><br>**ANSWER** |

Defendant Ingersoll-Rand Company ("IR"), by its counsel, Cooley Godward Kronish LLP, responds to plaintiffs' Complaint as follows:

1. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 1.

2. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 2.

3. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 3.

4. Admits the allegations of ¶ 4.

5. Admits the allegations of ¶ 5.

6. Admits the allegations of ¶ 6.

7. Admits that plaintiffs seek indemnification from IR, denies that Flowserve do Brasil Ltda. was a subsidiary of IR acquired by Flowserve, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence in ¶ 7. Admits the allegations of the second sentence in ¶ 7 and refers the Court to the Purchase

Agreement for its full and accurate contents. Admits that Flowserve has demanded indemnification and that IR has not made an indemnification payment to Flowserve, and otherwise denies the allegations of ¶ 7.

8. Admits the allegations of ¶ 8.

9. Admits the allegations of ¶ 9.

10. Admits the first sentence of ¶ 10 and that one of the entities owned directly or indirectly by the IDP partnership was IDP Brasil, refers the Court to the Purchase Agreement for its full and accurate contents, and otherwise denies the allegations of ¶ 10.

11. Admits the allegations of ¶ 11.

12. Admits the allegations of ¶ 12.

13. Admits the allegations of ¶ 13.

14. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 14.

15. Admits the allegations of ¶ 15.

16. Admits the allegations of ¶ 16 and refers the Court to the Purchase Agreement for its full and accurate contents.

17. Admits that under § 2.2 of the Purchase Agreement, the "Partnership Group" is defined as IDP and each of its direct and indirect controlled affiliates, domestic and foreign, listed on § 2.2 of the Disclosure Schedule, including IDP Brasil, and otherwise denies the allegations of ¶ 17.

18. Admits that while § 2.12 of the Disclosure Schedule listed a number of tax audits, proceedings and examinations by the Internal Revenue Service ("IRS"), five states, and six foreign nations, it did not list any tax matters relating to IDP Brasil.

19. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 19.

20. Admits the allegations of ¶ 20 and refers the Court to the Purchase Agreement for its full and accurate contents.

21. Admits the allegations of ¶ 21 and refers the Court to the Purchase Agreement for its full and accurate contents.

22. To the extent that ¶ 22 requires a response, lacks knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 22.

23. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 23.

24. Admits that while § 2.12 of the Disclosure Schedule listed a number of tax audits, proceedings and examinations by the IRS, five states, and six foreign nations, it did not list any tax matters relating to IDP Brasil, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 24.

25. Upon information and belief denies the allegations of ¶ 25 as to IR, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 25 as to IR's agents, subsidiaries, and affiliates.

26. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 26.

27. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the first sentence of ¶ 27. Denies the allegations of the second sentence of ¶ 27.

28. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 28. Denies the allegations of the second sentence of ¶ 28.

29. Lacks knowledge or information sufficient to form a belief as to the truth of the allegation of ¶ 29 and denies that plaintiffs are entitled to the relief they seek.

30. Admits the allegations of ¶ 30.

31. Admits that IR had not made an indemnification payment to plaintiffs, and otherwise denies the allegations of ¶ 31.

## FIRST COUNT

32. Defendant incorporates by reference its responses to ¶¶ 1-31.

33. Admits the allegations of ¶ 33.

34. Denies the allegations of ¶ 34.

35. Denies the allegations of ¶ 35.

36. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 36.

37. Admits that Flowserve has demanded that IR indemnify it and Flowserve RED Corporation for what the Complaint refers to as the Brazilian Tax Matters, and otherwise denies the allegations of ¶ 37.

38. Denies the allegations of ¶ 38.

39. Denies the allegations of ¶ 39.

## SECOND COUNT

40. Defendant incorporates by reference its responses to ¶¶ 1-39.

41. Denies the allegations of ¶ 41.

42. Denies the allegations of ¶ 42.

43. Admits that a controversy exists between plaintiffs and IR concerning plaintiffs' claim for indemnification, and otherwise denies the allegations of ¶ 43.

44. Denies the allegations of ¶ 44.

## THIRD COUNT

45.  Defendant incorporates by reference its responses to ¶¶ 1-44.

46.  Admits that IR made certain warranties in Article II of the Purchase Agreement, refers the Court to the Purchase Agreement for its full and accurate contents, and otherwise lacks information or knowledge sufficient to form a belief as to the truth of the allegations of ¶ 46.

47.  Lacks knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 47.

48.  Denies the allegations of the paragraph following ¶ 47 of the Complaint (misnumbered as ¶ 47).

## AFFIRMATIVE DEFENSES AND COUNTERCLAIM

49.  In 1992, defendant Ingersoll-Rand Company ("IR") and Dresser Industries, Inc. ("Dresser") formed a partnership known as Ingersoll-Dresser Pump Company (the "Partnership"), to which each of IR and Dresser contributed its U.S. and foreign subsidiaries involved in the pump industry. The Partnership thus owned the former IR and Dresser subsidiaries, and was in turn owned 51 percent by IR and 49 percent by Dresser.

50.  One of the companies owned by the Partnership was a former subsidiary of Dresser in Brazil known as Ingersoll Dresser Pumpo do Brasil Industria E Comerico Ltda. ("IDP Brasil").

51.  During the period IR owned an interest in the Partnership, IR had limited knowledge on a day-to-day basis of the tax affairs of IDP Brasil, a historical Dresser company.

52.  On or about February 2, 2000, IR, through an affiliate known as IDP Acquisition, LLC ("Acquisition"), purchased Dresser's interest in the Partnership.

53.  On or about February 9, 2000, IR and Acquisition, as "Sellers," entered into an agreement with plaintiff Flowserve Corporation ("Flowserve") and Flowserve RED Corporation

("Flowserve Red"), as "Buyers," pursuant to which IR and Acquisition agreed to sell their ownership interests in the Partnership to Flowserve and Flowserve RED (the "Purchase Agreement") upon the closing of the transactions contemplated by the agreement (the "Closing").

54. Section 2.12(b) of the Purchase Agreement provides in part that, in substance, the Sellers warranted that other than as set forth on a Disclosure Schedule, there were no pending tax audits of or claims against the Partnership or its subsidiaries. Section 6.5(a) provides in part for, in substance, the Sellers' indemnification of the Buyers for (i) any taxes of a Partnership subsidiary, and any liability or expense, including reasonable attorneys' fees, incurred in contesting or otherwise in connection with such taxes, with respect to the period through the Closing; (ii) taxes arising from a breach of representations and warranties of the Sellers in the Purchase Agreement regarding taxes, with respect to the period through the Closing; and (iii) for a tax year straddling the Closing, the taxes that would be payable by a Partnership subsidiary if the tax year ended on the Closing ("Straddle Period Taxes").

55. Upon information and belief, at the time of the execution of the Purchase Agreement, IR and Acquisition had no knowledge that any taxes owed by IDP Brasil had not been paid or would not be paid when due; that any claim for unpaid taxes was being asserted against IDP Brasil; that there were any examinations, audits, actions, proceedings, investigations or disputes pending, or claims asserted in writing, for taxes upon IDP Brasil; or that any representation or warranty in the Purchase Agreement relating to IDP Brasil was untrue.

56. While the Disclosure Schedule listed a number of tax audits, proceedings and examinations by the IRS, five states, and six foreign nations, it did not list Brazil. IR and

Acquisition did not knowingly or intentionally omit tax matters relating to IDP Brasil from the Disclosure Schedule.

57. The sale of the Partnership closed on or about August 8, 2000. Upon information and belief, at the time of the Closing, IR and Acquisition had no knowledge that any taxes owed by IDP Brasil had not been paid or would not be paid when due; that any claim for unpaid taxes was being asserted against IDP Brasil; that there were any examinations, audits, actions, proceedings, investigations or disputes pending, or claims asserted in writing, for taxes upon IDP Brasil; or that any representation or warranty in the Purchase Agreement relating to IDP Brasil was untrue.

58. As a result of the sale of the Partnership, from on or about August 8, 2000, Flowserve and Flowserve RED or its successors in interest, through their ownership of the Partnership, owned the subsidiaries of the Partnership, including IDP Brasil. Upon information and belief, from on or about August 8, 2000, Flowserve and Flowserve RED or its successors in interest had authority over and control of IDP Brasil, supervised its operations, and had full access to all information in IDP Brasil's possession or control concerning the affairs of IDP Brasil, including all information relating to outstanding tax claims against IDP Brasil.

59. As set forth in § 6.4(d) of the Purchase Agreement:

> After the Closing Date, each of the Sellers and **the Buyers shall promptly notify the other parties in writing upon written receipt of the commencement of any Tax audit or administrative or judicial proceeding or of any demand or claim on any Seller, any Buyer, or any member of the Partnership Group[1] which**, if determined adversely to the taxpayer or after lapse of time, **would be grounds for indemnification by the other party under Section 6.5 of this Agreement. In the case of an audit or administrative or judicial proceeding that related to periods ending on or before the Closing Date, the Sellers shall have the sole right**, at their expense, **to control the**

---

[1] The Purchase Agreement, at § 2.2, defines the "Partnership Group" as the Partnership together with each direct and indirect controlled affiliate of the Partnership. IDP Brasil was expressly listed as one such affiliate of the Partnership on the Disclosure Schedule.

**conduct of such audit or proceeding. . . . In the case of an audit or administrative or judicial proceeding that relates to a Straddle Period**, the Buyers shall have the right, at their expense, to control the conduct of such audit or proceeding, *provided, however*, that (i) **the Sellers shall have the right**, at their expense, **to participate in such proceeding** and (ii) **the Buyers will act upon all reasonable recommendations made by the Sellers** and (iii) **the Buyers will not settle or refuse to settle any such proceeding without Sellers' consent**, which will not be unreasonably withheld. (Emphasis in bold added.)

60. Further, § 6.5(c) of the Purchase Agreement provides:

Payment by the indemnitor of any amount due under this Section 6.5 shall be made within ten days following written notice by the indemnitee that payment of such amounts to the appropriate Taxing Authority **is due**, provided that the indemnitor shall not be required to make any payment earlier than two days before it is due to the appropriate Taxing Authority. (Emphasis added.)

61. For more than three years following the Closing under the Purchase Agreement, neither Flowserve, Flowserve RED or its successors in interest nor anyone else ever notified IR or Acquisition of any tax claims against or tax controversies concerning IDP Brasil.

62. On April 27, 2004, three years and eight months after the closing date, Flowserve wrote the Corporate Tax Department of IR, claiming that at the time of the Closing there had been 29 tax controversies concerning IDP Brasil. Flowserve stated that it had already made payments with respect to some of these tax claims, totaling $868,000, and had incurred related legal fees of $592,000, totaling altogether $1.46 million that Flowserve had allegedly paid or incurred before providing IR notice. Flowserve further acknowledged that IR should have the right to make any future decisions regarding the tax claims against IDP Brasil.

63. Flowserve's letter made no reference to or claim for Straddle Period Taxes.

64. Unaware of tax claims against IDP Brasil from the pre-Closing period, the Corporate Tax Department of IR required and sought from Flowserve further information about the alleged pre-Closing tax controversies.

65. In June 2004, Flowserve provided certain summary information about the alleged tax controversies, and consulted with IR about whether an appeal should be taken in one particular matter.

66. By letter dated July 26, 2004, Flowserve claimed that the IDP Brasil taxes allegedly paid relating to tax controversies pending at the Closing and attorneys' fees incurred in connection therewith now had grown to over $2.4 million (including taxes that were now stated to be approximately $1.69 million and attorneys's fees that were now stated to be approximately $737,000), requested reimbursement thereof, and enclosed an invoice and certain supporting documents.

67. Flowserve's letter and invoice made no reference to or claim for Straddle Period Taxes.

68. In an attempt to obtain full and necessary information about the tax controversies and attorneys' fees as to which Flowserve had requested reimbursement, in or about November, 2004, a representative of IR requested that Luis Edmundo Cardoso Barbosa, the attorney representing IDP Brasil in connection with the alleged tax controversies, provide documentation concerning the tax claims against IDP Brasil, copies of his retention agreements with IDP Brasil, and any other documents concerning IDP Brasil's tax controversies. Mr. Barbosa did not provide the requested documentation.

69. In another attempt to obtain full and necessary information, including about Mr. Barbosa's retention, services and fees, in October 2004, representatives of IR made an appointment, through Flowserve, to meet in Sao Paolo, Brazil with Mr. Barbosa on November 23, 2004 to obtain further information. For the sole purpose of meeting with IDP Brasil's attorney, two representatives of IR flew to Sao Paolo. Mr. Barbosa avoided the meeting. The

day before the scheduled meeting, the IR representatives learned through Flowserve that Mr. Barbosa unilaterally changed the location of the meeting to Rio de Janeiro. Then, the IR representatives learned through Flowserve that Mr. Barbosa had suddenly cancelled the meeting, suggesting that it be rescheduled for three days later, which was the day after Thanksgiving. Put off by Mr. Barbosa, the representatives returned to the United States and determined to make another effort to obtain the necessary information in a different way.

70. On December 3, 2004, IR wrote to Flowserve, stating that IR did not have sufficient information to determine whether the amounts set out on the invoice transmitted on July 26, 2004 were indemnifiable items under the Purchase Agreement and that IR was unable to evaluate the accuracy of or take any action on the invoice until it received adequate information concerning the indemnification claim. IR detailed the information it was then seeking, and requested that it be provided.

71. Flowserve did not provide the requested information, or respond in any way to IR's December 3 letter.

72. From 2004 until July 2006, a one and a half year period, neither Flowserve nor Flowserve RED nor its successors in interest communicated with IR or Acquisition about the alleged tax claims against IDP Brasil or the indemnification claim.

73. On July 20, 2006, counsel for Flowserve and Flowserve RED wrote to IR and Acquisition requesting indemnification of IDP Brasil taxes allegedly paid relating to tax controversies pending at the Closing and attorneys' fees incurred in connection therewith. The amount of taxes was now stated to be approximately $2.28 million, and the amount of attorneys' or other outside consultants' fees was now stated to be approximately $1.03 million, or a total of approximately $3.31 million.

74. The July 20 letter did not provide any of the information that IR had requested in December 2004, or any other information about the items for which indemnification was sought.

75. The July 20 letter made no reference to or claim for Straddle Period Taxes.

76. Following the provision of certain summary information and documents, IR and Flowserve met on December 8, 2006 to discuss the matter. Flowserve stated, among other things, that the amount of taxes already allegedly paid and the amount of attorneys' fees allegedly incurred had grown substantially from the amounts stated in the July 20, 2006 letter.

77. Upon information and belief, in or about mid-2006, IDP Brasil had elected to participate in a tax amnesty program under Brazilian law. Neither Flowserve nor Flowserve RED nor its successors in interest had informed IR or Acquisition in advance or sought their agreement concerning these payments. The tax payments that IDP agreed to pay in connection with its tax amnesty election in 2006 constitute a substantial portion of the amounts as to which plaintiffs now seek indemnification.

78. In the December 8, 2006 meeting, IR requested specific substantiating information relating to the matters as to which indemnification was sought, and Flowserve agreed to provide it.

79. In March 2007, Flowserve provided additional information.

80. In May, IR met with Flowserve to attempt to resolve the claim for indemnification. In the meeting, IR, among other things, noted its concern about the reasonableness of the attorneys' fees allegedly incurred, pointing out discrepancies in the documentation provided relating to the attorneys' fees.

81. IR also, among other things, noted that Flowserve, Flowserve RED and/or its successors in interest had suffered or would suffer no economic injury from IDP Brasil's

payment of most of the taxes it allegedly paid because of the availability of a foreign tax credit ("FTC") under the Internal Revenue Code (the "Code"). Pursuant to the provisions of the Code, a taxpayer who pays to a foreign jurisdiction, or is deemed to pay to a foreign jurisdiction through its ownership of ten percent or more of a foreign subsidiary, taxes that would be considered income taxes under U.S. tax law principles is entitled to a credit against the taxpayer's U.S. income taxes in an amount equal to the taxes paid to the foreign jurisdiction a FTC. By virtue of the FTC, any foreign income taxes paid reduce the taxpayer's U.S. income tax obligation by the same amount.

82. Flowserve disagreed with IR's position regarding the availability of a FTC. IR suggested that the issue be resolved by obtaining a letter ruling from the IRS on whether or not Flowserve, Flowserve RED and/or its successors in interest were entitled to the FTC.

83. To IR's knowledge, plaintiffs did not seek a private letter ruling from the IRS. Instead, they filed this action.

## FIRST AFFIRMATIVE DEFENSE

84. IR repeats and realleges ¶¶ 1-83, above.

85. Plaintiffs gave IR and Acquisition no written notice of any tax claims against or demands on IDP Brasil until on or about April 27, 2004, three years and eight months after the Closing; did not permit IR or Acquisition to control the conduct of the audits of or proceedings concerning IDP Brasil; and settled or otherwise agreed to pay taxes for which they now seek indemnification without informing IR or Acquisition in advance or seeking their agreement.

86. By virtue of the foregoing, plaintiffs materially breached the Purchase Agreement.

87. As a result, plaintiffs claims under the Purchase Agreement are barred.

## SECOND AFFIRMATIVE DEFENSE

88. IR repeats and realleges ¶¶ 1-87, above.

89. Plaintiffs gave IR and Acquisition no written notice of any tax claims against or demands on IDP Brasil until on or about April 27, 2004, three years and eight months after the Closing; did not permit IR or Acquisition to control the conduct of the audits of or proceedings concerning IDP Brasil; and settled or otherwise agreed to pay taxes for which they now seek indemnification without informing IR or Acquisition in advance or seeking their agreement.

90. By virtue of the foregoing, conditions precedent to IR's indemnification undertakings in the Purchase Agreement have not been performed or satisfied.

91. As a result, plaintiffs claims under the Purchase Agreement are barred.

### THIRD AFFIRMATIVE DEFENSE

92. IR repeats and realleges ¶¶ 1-91, above.

93. Flowserve and Flowserve RED and its successors in interest owed IR a duty of good faith and fair dealing arising under and in connection with the Purchase Agreement.

94. Plaintiffs gave IR and Acquisition no written notice of any tax claims against or demands on IDP Brasil until on or about April 27, 2004, three years and eight months after the Closing; did not permit IR or Acquisition to control the conduct of the audits of or proceedings concerning IDP Brasil; and settled or otherwise agreed to pay taxes for which they now seek indemnification without informing IR or Acquisition in advance or seeking their agreement.

95. By virtue of the foregoing, plaintiffs breached their duty of good faith and fair dealing.

96. Plaintiff's breaches prejudiced IR.

97. As a result, plaintiffs' claims under the Purchase Agreement are barred.

### FOURTH AFFIRMATIVE DEFENSE

98. IR repeats and realleges ¶¶ 1-97, above.

99. Most of the taxes IDP Brasil allegedly paid as to which plaintiffs seek indemnification are taxes that would be considered income taxes under U.S. tax law principles.

100. Plaintiffs are or will be entitled to a FTC for most of the taxes IDP Brasil allegedly paid.

101. By virtue of the foregoing, any injury to plaintiffs for which they seek recovery is reduced by the amount of the FTC to which they are or will be entitled.

102. As a result, the amounts as to which plaintiffs seek indemnification and a declaratory judgment must be reduced and offset by the amount of the FTC to which they are or will be entitled.

## FIFTH AFFIRMATIVE DEFENSE

103. IR repeats and realleges ¶¶ 1-102, above.

104. To the extent that plaintiffs have not claimed a FTC with respect to taxes as to which plaintiffs seek indemnification, and as a result have lost the ability to claim a FTC, plaintiffs have failed to mitigate their damages.

105. As a result, the amounts as to which plaintiffs seek indemnification must be reduced and offset by the amount of any FTC to which they were entitled but have lost the ability to claim.

## SIXTH AFFIRMATIVE DEFENSE

106. IR repeats and realleges ¶¶ 1-105, above.

107. Section 8.1(c) of the Purchase Agreement provides in part:

If the amount with respect to which any claim is made … under Section 6.5 (an "Indemnity Claim") gives rise to a currently realizable actual Tax Benefit (as defined below) to the party making the claim, the indemnity payment shall be reduced by the amount of such Tax Benefit actually available to the party making the claim. For purposes of this Section 8.1(c), a "Tax Benefit" to a party means an amount by which the tax liability of such party (or group of affiliates including such party) is actually reduced (including, without limitation, by deduction, reduction of income by virtue of entitlement

to refund, credit or otherwise) as such amount may actually be reduced by, but not below zero, any increase in such party's tax liability as a result of its receipt of payment for such Indemnity Claim plus any related interest received from the relevant Taxing Authority. Where a party has other losses, deductions, credits or items available to it, the Tax Benefit from any losses, deductions, credits or items relating to the Indemnity Claim shall be deemed to be realized after any other losses, deductions, credits or items. For the purpose of this Section 8.1(c), a Tax Benefit is "currently realizable" to the extent that such Tax Benefit is actually realized in terms of reducing the actual amount of Taxes payable in the current taxable period or year or in any Tax Return with respect thereto (including through a carryback to a prior taxable period) or in any taxable period or year prior to the date of the Indemnity Claim. In the event that there should be a determination disallowing the Tax Benefit, the indemnifying party shall be liable to refund to the indemnified party the amount of any related reduction previously allowed or payments previously made to the indemnifying party pursuant to this Section 8.1(c).

108.    Thus, pursuant to the terms of the Purchase Agreement, the amount of the indemnity obligation owed to plaintiffs, if any, is reduced by the amount of the currently realizable actual Tax Benefit resulting from the FTC.

109.    As a result, the amounts as to which plaintiffs seek indemnification and a declaratory judgment must be reduced and offset by the amount of the FTC to which they are or will be entitled.

### SEVENTH AFFIRMATIVE DEFENSE

110.    IR repeats and realleges ¶¶ 1-109, above.

111.    To the extent that plaintiffs have not claimed a FTC with respect to taxes as to which plaintiffs seek indemnification, and as a result the FTC does not give rise to a currently realizable actual Tax Benefit within the meaning of the Purchase Agreement, plaintiffs have failed to mitigate their damages.

112.    As a result, the amounts as to which plaintiffs seek indemnification must be reduced and offset by the amount of any FTC to which they were entitled but have failed to claim.

**EIGHTH AFFIRMATIVE DEFENSE**

113.   IR repeats and reallages ¶¶ 1-112, above.

114.   Section 2.12(a) of the Purchase Agreement defines "Taxes" as including "taxes, . . . together with any interest . . . imposed by any governmental authority, domestic or foreign."

115.   Section 6.5 of the Purchase Agreement provides in part for the Sellers' indemnification of the Buyers for "any Taxes . . . with respect to any taxable period or a portion thereof that ends on or before the Closing Date . . . ."

116.   From the Closing onward, Flowserve and Flowserve RED or its successors in interest had full control of the management of the alleged tax controversies concerning IDP Brasil, including whether or not to pay the amounts claimed by the tax authorities or to settle the claims of the tax authorities.  As a result, from the Closing onward, they had the ability to control whether interest would continue to accrue on the alleged tax claims.

117.   From the Closing onward, IR had no control over the management of the alleged tax controversies concerning IDP Brasil, and upon information and belief had no knowledge of the alleged tax claims against IDP Brasil until more than three years following the Closing.

118.   As a result, plaintiffs are not entitled to indemnification for interest paid or to be paid to the Brazilian tax authorities attributable to the period from the Closing onward.

**NINTH AFFIRMATIVE DEFENSE**

119.   IR repeats and realleges ¶¶ 1-118, above.

120.   Upon information and belief, all of the alleged Taxes as to which plaintiffs seek indemnification were paid after the Closing, and in most instances years after the Closing.

121.   Plaintiffs have failed to mitigate their damages with respect to interest paid or to be paid to the Brazilian tax authorities attributable to the period from the Closing onward.

122. As a result, the amounts as to which plaintiffs seek indemnification must be reduced and offset by the amount of the interest paid or to be paid to the Brazilian tax authorities attributable to the period from the Closing onward.

### TENTH AFFIRMATIVE DEFENSE

123. IR repeats and realleges ¶¶ 1-122, above.

124. Upon information and belief, plaintiffs' claim for indemnification for Straddle Period Taxes is barred by the applicable statute of limitations.

### ELEVENTH AFFIRMATIVE DEFENSE

125. IR repeats and realleges ¶¶ 1-124, above.

126. Flowserve and Flowserve RED and its successors in interest owed IR a duty of good faith and fair dealing arising under and in connection with the Purchase Agreement.

127. Upon information and belief, plaintiffs did not inform IR of the payment of Straddle Period Taxes or make any claim for indemnification therefore prior to 2007.

128. By virtue of the foregoing, plaintiffs breached their duty of good faith and fair dealing.

129. Upon information and belief, if plaintiffs were not entitled to claim a FTC in connection with the Straddle Period Taxes, IR would have been entitled to claim a FTC in connection with the Straddle Period Taxes.

130. Upon information and belief, as a result of plaintiffs' not informing IR of the payment of Straddle Period Taxes or making any claim for indemnification therefore prior to 2007, IR has lost the ability to claim a FTC in connection with the Straddle Period Taxes.

131. As a result, plaintiffs' claims under the Purchase Agreement relating to Straddle Period Taxes are barred.

## TWELFTH AFFIRMATIVE DEFENSE

132. IR repeats and realleges ¶¶ 1-131, above.

133. If the Straddle Period Taxes were paid following an audit or administrative or judicial proceeding relating to the Straddle Period, plaintiffs did not give IR or Acquisition the opportunity to participate in such proceeding, or to make reasonable recommendations relating thereto, and may have settled or refused to settle such proceeding without IR's or Acquisition's consent.

134. By virtue of the foregoing, plaintiffs may have materially breached the Purchase Agreement.

135. By virtue of the foregoing, IR may have been prejudiced.

136. As a result, plaintiffs claims under the Purchase Agreement relating to Straddle Period Taxes may be barred.

## THIRTEENTH AFFIRMATIVE DEFENSE

137. IR repeats and realleges ¶¶ 1-136, above.

138. Section 6.5 of the Purchase Agreement provides for indemnification of, among other things, "reasonable fees for attorneys" incurred in contesting taxes of a Partnership subsidiary with respect to the period through the Closing.

139. Upon information and belief, the attorneys' fees as to which plaintiffs seek indemnification were not reasonable or proper.

140. If plaintiffs are entitled to indemnification, they would be entitled to indemnification of attorneys' fees incurred in contesting IDP Brasil's taxes only to the extent that such attorneys' fees were reasonable and proper.

## FOURTEENTH AFFIRMATIVE DEFENSE

141. IR repeats and realleges ¶¶ 1-140, above.

142. The Purchase Agreement does not provide that, in the event of a suit under the Purchase Agreement, any party to the Agreement is entitled to recover its attorneys' fees in the suit.

143. Plaintiffs' claim for their attorneys' fees in this action is without merit.

## COUNTERCLAIM

144. IR repeats and realleges ¶¶ 1-143, above.

145. Plaintiffs gave IR and Acquisition no written notice of any tax claims against or demands on IDP Brasil until on or about April 27, 2004, three years and eight months after the Closing; did not permit IR or Acquisition to control the conduct of the audits of or proceedings concerning IDP Brasil; and settled or otherwise paid taxes for which they now seek indemnification without informing IR or Acquisition in advance or seeking their agreement.

146. Upon information and belief, plaintiffs did not inform IR of the payment of Straddle Period Taxes or make any claim for indemnification therefore prior to 2007.

147. If the Straddle Period Taxes were paid following an audit or administrative or judicial proceeding relating to the Straddle Period, plaintiffs did not give IR or Acquisition the opportunity to participate in such proceeding, or to make reasonable recommendations relating thereto, and may have settled or refused to settle such proceeding without IR's or Acquisition's consent.

148. By virtue of the foregoing, plaintiffs materially breached the Purchase Agreement and their duty of good faith and fair dealing thereunder.

149. Upon information and belief, if plaintiffs are entitled to indemnification from IR, as a result of plaintiffs' breaches, the amount subject to indemnification was increased.

150.  Upon information and belief, if plaintiffs are entitled to indemnification from IR with respect to Straddle Period Taxes, as a result of plaintiffs' breaches, IR has lost the ability to claim a foreign tax credit in connection with the Straddle Period Taxes.

151.  As a result of plaintiffs' breaches, IR has been damaged, in an amount presently unknown and to be established at trial.

WHEREFORE, defendant demands judgment dismissing the complaint herein in its entirety, and granting defendant judgment on its counterclaim against plaintiffs in an amount to be established at trial, the costs of suit, and such other relief as this Court shall deem just and proper.

Dated: August 13, 2007

COOLEY GODWARD KRONISH LLP

By: *(signature)*
William H. O'Brien (WO-5271)
Stephen D. Gardner (SG-3534)
Allison J. Hersh (AH-2665)

1114 Avenue of the Americas
New York, New York 10036
(212) 479-6000

Attorneys for Defendant
Ingersoll-Rand Company